[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON TEMPORARY INJUNCTION
This action concerns a 1927 subdivision of real property located in Naugatuck, Connecticut; originally owned by J.H. Whittemore Company. The subdivision consisted of six sections divided into 52 lots as indicated on the map entitled "Hop Brook Development," which was recorded on the Naugatuck land records [Exhibit A]. The subdivision filing in 1927 predated zoning in the Borough of Naugatuck.
The defendant in this action seeks to subdivide his property [Lot 1, Section E] on which a residential building already exists. The intent of the defendants' subdivision would be to allow for the construction of additional single family dwellings on Lot 1, Section E. The defendants' proposed resubdivision would be in conformance with existing Naugatuck zoning requirements; but in the plaintiffs' view violative of restrictive covenants running with the land comprising the original "Hop Brook Development."
In this case the plaintiffs who own various lots within the "Hop Brook Development" subdivision are seeking to enjoin CT Page 2738 the defendant from his proposed resubdivision.
At this juncture only the issue of temporary injunctive relief is before the Court.
The plaintiffs have all taken title to their lots subject to an essentially uniform restrictive covenant which in pertinent part limits each lot to "one private residence for the use of one family only, . . ." [Exhibits B — W].
The only derivation from this intended scheme is found in the defendants' chain of title. First appearing in a conveyance of property in Section E to Louis A. Dibble in 1937 [Exhibit 1, F, 1] was the following provision:
 For it is particularly agreed and understood that should the Grantee, his heirs or signs, purchase further lands from the Grantor, or its successors, within "Block E", as shown on said map, the foregoing conveyance and restrictions may be revoked, in whole or in part, and others substituted therefore, by an agreement entered into by and between the Grantor, or its successors, and the Grantee, or his heirs or signs, alone, and without the consent of any other person or persons.
Dibble did in fact purchase additional property in Section E from J.H. Whittemore Company in 1946 [Exhibit G]. This conveyance allowed for the resubdivision of the lot into 15,000 square foot lots.
The plaintiffs introduced evidence through an expert title searcher that the plaintiffs and their predecessors in title had never released the restrictive covenants in their deeds which predated, Exhibits F G.
Portions of lots were conveyed by J.H. Whittemore Company, to parties in addition to the Dibble conveyances; but they appear as additions to lots which contain only one single family residence.
The plaintiffs entitlement to enforce the restrictive convenants in their deeds, requires a finding that there is a general plan of development applicable to the entire subdivision. Hoaker v. Alexander, 129 Conn. 433 (1942), Contegni v. Paige, 18 Conn. App. 47 (1989), Pulver v. Mascolo, 155 Conn. 644, 650 (1967), Marion Road Assn. v. Harlow, 1 Conn. App. 329, 333 (1984).
The issue of the intent to establish a general plan of CT Page 2739 development is determined by the language in the deeds, considered in light of all the surrounding circumstances Kelly v. Iver, 187 Conn. 31, 39 (1982).
The enforceability of uniform restrictive convenants is based on an equitable principal. The purchaser has paid a premium in reliance on the plan being carried out. Also, since the purchaser is bound to observe the covenant it would be inequitable to allow someone similarly subject to the restriction to violate it. Whitton v. Clark, 112 Conn. 28,35, (1930), Contegni v. Payne, 18 Conn. App. 47, 52 (1989).
In Contegni v. Payne, supra at 18 Conn. App. 53 the Appellate Court cited the listing of factors to be considered in determining the intent to develop land according to a uniform plan. The factors are: 1) common grantor's intention to sell entire development; 2) exhibiting map of entire tract at time of selling parcels; 3) actual development in accordance with restrictions; 4) substantial uniformity in restrictions imposed in deed executed by common grantor. These factors are also recognized in the texts. 5 R. Powell, Real Property Section 672 p. 60-26.
The evidence in this case indicates that the common grantor planned to and did sell the entire tract of "Hop Brook Development" encompassing properties of plaintiffs and defendants. The entire tract is set forth in a map filed with the Naugatuck town clerk [Exhibit A]. The evidence also established that no original lot had more than a single family residence on it. The final factor of uniformity in deed restrictions also supports the plaintiffs' claim that a uniform plan exists.
The relevant restrictions are nearly identical until the "Dibble" deeds, Exhibits E, F, G; which in effect seek to revise the plan as it applies to Section E. This attempt to change the plan can not serve to deny plaintiffs their reliance on a clearly articulated plan of development which restricted each original lot to a single family home.
Defendants alternatively argue that the intended restricted single family home is a use restriction rather than a numerical restriction. Thus, as long as each lot resulting from the resubdivision contains a single family residence, the plan intent is honored.
The Court finds that the plan restricted the number of houses as well as the use of the land.
For the reasons aforesaid the Temporary Injunction is CT Page 2740 granted.
The defendants are enjoined from any subdivision of their property located within the "Hop Brook Development", Naugatuck, Connecticut.
BY THE COURT, HON. ROBERT McWEENY SUPERIOR COURT JUDGE
CT Page 2740